Walter L. FLETCHER, Jr., Appellant,

v.

Anthony O'DONNELL, City
of Allentown.

No. 88–1494.

United States Court of Appeals,
Third Circuit.

Argued Dec. 15, 1988.

Decided Feb. 9, 1989.

Rehearing and Rehearing In Banc
Denied March 8, 1989.

Richard J. Orloski (argued), Orloski & Hinga, Allentown, Pa., for appellant, Walter Fletcher, Jr.

Thomas A. Wallitsch (argued), Weaver, Mosebach, Piosa, Hixson, Wallitsch & Marles, Allentown, Pa., for appellees, Anthony O'Donnell and City of Allentown.

* Hon. John F. Gerry, Chief Judge, United States District Court for the District of New Jersey, sitting by designation.

Before GIBBONS, Chief Judge, HUTCHINSON, Circuit Judge, and GERRY, District Judge.*

OPINION OF THE COURT

GIBBONS, Chief Judge:

Walter L. Fletcher, Jr., the plaintiff in a Civil Rights Act suit against police officer Anthony O'Donnell and his employer, the City of Allentown, Pennsylvania, appeals from a judgment in Fletcher's favor against Officer O'Donnell but in favor of the City. The judgment against Officer O'Donnell was entered on a jury verdict finding $750.00 in compensatory and $750.00 in punitive damages. Fletcher contends that the damage verdict was the result of an improper instruction and that a new trial should be awarded. The judgment in favor of the City of Allentown was entered after the court granted the City's motion for a directed verdict. Fletcher contends that, taking into account evidence which was improperly excluded, the court erred in granting that motion. We will affirm the judgment against Officer O'Donnell. We will reverse the judgment in favor of the City and remand for further proceedings.

I.

From the evidence admitted at trial, the jury could find that Fletcher, a black male, was sitting with black friends at a "white" bar in Allentown when the bar management asked him to leave. When he declined to do so, the management called the Allentown Police. Two officers responded. One of them, Officer O'Donnell, grabbed Fletcher from behind, shoved him out of the bar with a nightstick, and hit him with the nightstick while they were in the parking lot. O'Donnell then handcuffed Fletcher and drove him to the police station. There, O'Donnell choked him until another officer intervened to prevent further injury to Fletcher.

Officer O'Donnell's version of the events is different. The trial court concluded that the case against him should go to the jury. The jury answered interrogatories as follows:

1. Has the plaintiff, Walter L. Fletcher, Jr., proved by a preponderance of the evidence that the defendant, Anthony O'Donnell, arrested him without probable cause?

*Answer:* No.

2. Has the plaintiff, Walter L. Fletcher, Jr., proved by a preponderance of the evidence that the defendant, Anthony O'Donnell, used excessive force at the time of his arrest and/or at the Allentown Police Station?

*Answer:* Yes.

3. State in dollars the amount of compensatory damages Walter L. Fletcher, Jr. incurred as a result of the conduct of Anthony J. O'Donnell.

*Answer:* Nothing.

4. State in dollars the amount, if any, you award to Walter L. Fletcher, Jr. for punitive damages.

*Answer:* Fifteen Hundred Dollars

Fletcher's counsel objected that the verdict was inconsistent, in that the jury found he had been subjected to excessive force but did not award compensatory damages. The trial court agreed, and asked the jury to reconsider its verdict. The court instructed the jury that if O'Donnell used excessive force some compensatory damages should be awarded, and that the award of punitive damages must bear some relationship to the compensatory award.

Fletcher contends that the court erred in reinstructing the jury. It is his position that the reinstruction amounted to a direction to the jury that it should reduce the punitive damage award in order to award some compensatory damages and reconcile the verdict. The court certainly mentioned the possibility that the punitive damage award might be reduced. However, we may not look at that suggestion in isolation:

In examining an alleged erroneous instruction to the jury, it is necessary to view the charge as a whole. Our func-

tion is to determine whether the charge, taken as a whole and viewed in light of the evidence, fairly and adequately submits the issues in the case to the jury. *Ayoub v. Spencer,* 550 F.2d 164, 167 (3d Cir.1977) (citation omitted). The trial judge also instructed the jurors that if they thought $1500 in punitive damages was correct, they could leave the punitive damage verdict at $1500 and make a compensatory award as well. He even instructed that the all-powerful jury could stand by their prior determination, although he informed them such an outcome would result in a new trial. Our review of the reinstruction as a whole convinces us that there was no error.

After the reinstruction, the jury deliberated further and awarded Fletcher $750.00 in compensatory and $750.00 in punitive damages against O'Donnell.

## II.

In an effort to establish the liability of the City of Allentown, Fletcher attempted to prove that O'Donnell's use of excessive force was pursuant to a City custom of tolerating such conduct by its police officers which was a proximate cause of his injury. A city may be held liable for an official policy or a custom which proximately causes a constitutional deprivation. A single incident violating a constitutional right done by a governmental agency's highest policymaker for the activity in question may suffice to establish an official policy. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (county attorney's decision to have sheriffs enter premises established official policy). A single incident by a lower level employee acting under color of law, however, does not suffice to establish either an official policy or a custom. However, if custom can be established by other means, a single application of the custom suffices to establish that it was done pursuant to official policy and thus to establish the agency's liability. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Custom may be established by proof of knowledge and acqui-

escence. *See Pembaur v. Cincinnati*, 475 U.S. at 481–82 n. 10, 106 S.Ct. at 473 n. 10.

Fletcher attempted to prove that Allentown had a custom of allowing excessive force by its police officers. He offered the testimony of Charles Cerva about an incident of use of excessive force by O'Donnell, Cerva's report of the incident to the Mayor and Chief of Police, and the failure of the City to investigate that complaint in any manner. He also sought to cross-examine O'Donnell about prior complaints against him of excessive use of force, in addition to the Cerva incident. These incidents allegedly included shooting a youth who ran from O'Donnell after attempting to steal parts from a car, and threatening to shoot someone involved in a traffic accident. Fletcher also sought to establish through O'Donnell's testimony that despite complaints against him the City took no action against him, at least respecting the Cerva complaint.

■ The trial court excluded Cerva's testimony and refused to permit O'Donnell's cross-examination about prior incidents of excessive force. The court gave several reasons for this ruling, none of which are legally sufficient. The first was that the other incidents involved allegedly excessive force against white people, and Fletcher was black. Had Fletcher been proceeding solely on a theory that there was a custom of use of excessive force only against blacks that ruling might have been within the range of discretion conferred in Fed.R. Evid. 403. Here, however, Fletcher complained that the excessive use of force was itself the complained of violation.

■ A second reason was that allowing proof of prior bad acts by Officer O'Donnell as a part of the case against the City would unduly prejudice O'Donnell, and was not relevant to the claim against him in his personal capacity. No doubt it would be prejudicial, but that prejudice was not a valid reason for preventing Fletcher from attempting to prove a custom of toleration of use of excessive force by using the only evidence which would suffice for that purpose. There were other means available to protect O'Donnell from such prejudice, in-

cluding a limiting instruction. Indeed the court could have heard the evidence outside the presence of the jury in the first instance, in order to determine whether Fletcher could establish a prima facie case of prejudice. Finally, the court could even consider a severance. None of these alternatives appears to have been considered.

■ Another reason relied on by the trial court was that Fletcher did not need a judgment against the City because the City would pay any judgment against O'Donnell. The court's reference apparently is to an indemnity undertaking which is not of record. The attorney for the City stated on the record that the City would pay any award. It appears that this representation referred only to compensatory damages since under Pennsylvania law an undertaking to indemnify for punitive damages is against public policy, *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 581, 517 A.2d 1270, 1277 (1986). This reason for excluding the evidence is legally insufficient, for only O'Donnell, not Fletcher, is a party to the indemnity undertaking; Fletcher has not been paid and has no direct claim against the City.

■ Finally, the trial court contended that if the evidence were admitted it would not suffice to establish a claim against the City. For the reasons set forth at the outset of Part II, that ruling, on the record as it now stands, was error. Had the court admitted the tendered testimony, Fletcher might have fallen short, since we do not know precisely how Cerva or O'Donnell would have responded. The offer of proof, however, was legally sufficient to require that he be cross-examined.

■ Since there was no proof of official policy and no proof of a custom of tolerating excessive use of force, the trial court granted the City's motion for a directed verdict. Since the directed verdict depended on the erroneous exclusion of evidence, it must be reversed.

### III.

■ In Part I above, we hold that the compensatory award of damages against

O'Donnell must be affirmed. That judgment establishes the amount of compensatory damages suffered by Fletcher. At any new trial, even against the City, Fletcher will be estopped by that judgment from attempting to recover compensatory damages in excess of that amount. No punitive damages may be recovered from the City. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Thus although we are reversing the directed verdict against the City, all that will be involved is its potential liability for the compensatory damages suffered by Fletcher. Obviously if the City elects to pay the $750, Fletcher's claim against it would be moot.[1]

The judgment against Officer O'Donnell will be affirmed. The judgment in favor of the City of Allentown will be reversed and the case remanded for proceedings consistent with this opinion.

---

**1.** No question of attorneys fees is presented by this appeal.