**Gary L. WAKSHUL and Karen Wakshul, Plaintiffs,**

v.

**CITY OF PHILADELPHIA, Police Officers Kenneth. Fleming and Jean Langan, Defendants.**

**Civil Action No. 96–5390.**

United States District Court, E.D. Pennsylvania.

March 24, 1998.

Jeffrey Abramowitz, Mitchell H. Klevan, Philadelphia, PA, for Plaintiffs.

Leon A. King, II, Philadelphia, PA, Vincent J. Morrison, Haddonfield, NJ, for Defendants.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiffs Gary and Karen Wakshul bring this suit against the City of Philadelphia ("the City") and two police officers, Kenneth Fleming ("Fleming") and Jean–Pierre Langan ("Langan"), asserting federal civil rights claims and state law claims for assault, battery, conspiracy, infliction of emotional distress, and loss of consortium. Currently pending before me are two motions for summary judgment, one filed by Fleming and Langan, and one filed by the City.

### I. Factual Background

The following facts are either not in dispute, or are presented in the light most favorable to plaintiffs, the nonmoving party.[1] The events at issue occurred on July 13, 1995, while Gary Wakshul was working in the normal course of his employment as a court officer for the Honorable Anne E. Lazarus, in the Court of Common Pleas for the First Judicial District of Pennsylvania, Philadelphia County. At approximately 3:00 p.m. on July 13, 1995, defendants Philadelphia Police Officers Kenneth Fleming and Jean–

---

1. This factual rendition is based on the plaintiffs' complaint and statement of facts in their Memoranda of Law in Opposition to Defendants' Motions for Summary Judgment.

Pierre Langan, dressed in civilian clothes, entered City Hall Courtroom 602 while court was in session. Fleming and Langan were there in the normal course of their employment, having been called to testify as witnesses. Gary Wakshul approached Fleming and Langan and asked them to state their business, because there was a pending sequestration order for all witnesses testifying in the proceeding before Judge Lazarus. After Fleming and Langan refused to either state their business or leave the courtroom, Wakshul attempted to escort them from the courtroom. Fleming and Langan physically assaulted and battered Wakshul in open court.

As a result of this incident, Judge Lazarus brought a disciplinary action against Fleming and Langan. Following a Police Board of Inquiry Hearing on February 24, 1997, Fleming and Langan were disciplined by the Philadelphia Police Department.

Gary and Karen Wakshul filed suit in June 1996 in the Court of Common Pleas for Philadelphia County. The Complaint alleges that Fleming and Langan physically assaulted and battered Gary Wakshul, negligently and intentionally inflicted emotional distress, and acted in conspiracy with the City of Philadelphia in committing these torts. The Complaint further alleges that in assaulting and battering Gary Wakshul, Fleming and Langan violated his constitutional rights to be free from excessive force, from summary punishment, and from deprivation of liberty without due process.[2] The Complaint also alleges that the City of Philadelphia, as a matter of policy and practice failed to adequately discipline, train, or otherwise direct Officers Fleming and Langan, and, therefore, violated Gary Wakshul's constitutional rights to be free from excessive force, deprivation of liberty without due process, and summary punishment, as protected by the First, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983. Finally, the Complaint alleges that, as a result of the defendants' tortious acts against her husband, Karen Wakshul has suffered loss of consortium. In August 1996,

the City removed the action to this court pursuant to 28 U.S.C. § 1441. The City and Officers Fleming and Langan have filed two separate motions for summary judgment.

## II. Discussion

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.

Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading," *id.,* but must support its response with affidavits, depositions, answers to interrogatories, or admissions on file. *See Celotex,* 477 U.S. at 324; *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990).

To determine whether summary judgment is appropriate, I must determine whether any genuine issue of material fact exists. An issue is "material" only if the dispute "might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine"

---

**2.** Note that Count I of the Complaint, although nominated "Assault," contains both a state law assault claim against all defendants, and a

§ 1983 claim against Fleming and Langan for violation of Wakshul's constitutional rights.

only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Thus, my inquiry at the summary judgment stage is only the "threshold inquiry of determining whether there is the need for a trial," that is, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 250–52.

## B. Tort Claims

Gary Wakshul claims that Officers Fleming and Langan assaulted and battered him, inflicted emotional distress upon him, and conspired with the City in so doing. Karen Wakshul states a derivative claim for loss of consortium caused by the Officers' alleged tortious conduct towards her husband.

### 1. Defendant the City of Philadelphia

■ The City moves for summary judgment on Gary and Karen Wakshul's state tort claims because they are barred by the Pennsylvania Political Subdivision Tort Claims Act. The Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541, provides absolute immunity to the City of Philadelphia from tort liability, except in eight enumerated cases.[3] Plaintiffs' allegations do not fall within any of the eight enumerated exceptions. Furthermore, while there is a statutory abrogation of immunity of individual employees for *intentional* torts, this does not remove the immunity of the local agency, here the City. 42 Pa.C.S. § 8550. *See Smith v. City of Chester* 851 F.Supp. 656, 659 (E.D.Pa.1994) (cites omitted). The City is immune from suit on Gary and Karen Wakshul's state law claims. Accordingly, the City of Philadelphia's Motion for Summary Judgment is GRANTED as to plaintiffs' state law claims of assault, battery, conspira-cy, intentional and negligent infliction of emotional distress, and loss of consortium.[4]

### 2. Defendants Fleming and Langan

■ Fleming and Langan move for summary judgment on the basis that Gary Wakshul's state law tort claims are barred by the Pennsylvania Workers' Compensation Act, 77 P.S. § 1, *et seq.,* which prohibits an employee from bringing a tort action against co-employees for injuries sustained while in the course and scope of their employment.

The Pennsylvania Workers' Compensation Act was designed and intended to establish exclusive jurisdiction over all matters pertaining to work-related injuries. 77 P.S. § 481 ("The liability of an employer under this Act shall be exclusive and in place of all other liability ... in any action at law or otherwise on account of any injury or death as defined [in the Act]"); *Krawchuk v. Philadelphia Electric Co.,* 497 Pa. 115, 439 A.2d 627 (1981). The Pennsylvania Supreme Court has held that an employee's common law right to damages for injuries suffered in the course of his employment as a result of his employer's negligence is completely surrendered in exchange for the exclusive statutory right of the employee to compensation for all such injuries, and the employer's liability as a tortfeasor for injuries to his employee is abrogated. *Kohler v. McCrory Stores,* 532 Pa. 130, 615 A.2d 27 (1992). Gary Wakshul received benefits pursuant to the Pennsylvania Workers' Compensation Act for the injuries allegedly sustained as a result of the altercation with Fleming and Langan, and is, therefore, subject to the provisions of the Act. Wakshul Dep., City's Motion for Summary Judgment, Exh. B, at 57–59; City's Sur–Reply, Exh. B, "Notice of Compensation Payable"; City's Sur–Reply, Exh. C, "Employer's Affidavit of Return to Work";

---

3. Section 8542 of the Tort Claims Act permits recovery against a local agency or its employee for negligent acts if the act falls into one of the following eight categories: (1) vehicle liability; (2) care, custody, control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 Pa.C.S.A. § 8542.

4. Note that the City, as Wakshul's employer, is also immune from suit for any harm caused by acts of its employees, regardless of whether the conduct was intentional or negligent, pursuant to the exclusivity clause of the Pennsylvania Workers' Compensation Act, 77 P.S. § 481(a). *See Noyes v. Cooper,* 396 Pa.Super. 592, 579 A.2d 407 (1990).

City's Sur–Reply, Exh. D, "Suspend Compensation Benefits."

In order to decide Fleming and Langan's motion for summary judgment, I must determine whether the instant case falls within the "co-employee" rule of the exclusivity provisions of the Workers' Compensation Act, 77 P.S. § 72. This section provides:

> If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong.

77 P.S. § 72. Therefore, Fleming and Langan will be immune from liability for the tort claims at issue here if (1) Wakshul, Fleming, and Langan were "in the same employ" on July 13, 1995; (2) Wakshul, Fleming, and Langan were all acting in the course of their employment; and (3) the alleged acts were not intentional wrongs. The parties agree that Wakshul, Fleming, and Langan were acting in the course of their employment, Compl. ¶¶ 3–5 and Answer ¶¶ 3–4. Thus, I will consider the first and third elements.

█ Officers Fleming and Langan assert that they were "in the same employ" as Gary Wakshul on July 13, 1995, because all were employed by the City of Philadelphia. Fleming and Langan, as Philadelphia Police Officers, are employees of the City of Philadelphia. Wakshul argues that he is an employee of the First Judicial District, not the City of Philadelphia. Courts have used a range of tests to determine whether two parties are "in the same employ"; however, each case must be decided on its particular facts. *See Budzichowski v. Bell Telephone, et al.*, 503 Pa. 160, 164–65, 469 A.2d 111, 113 (1983) (holding that a physician and a telephone operator were "in the same employ" where both worked a certain number of hours for defendant Bell Telephone, both were paid a fixed salary by Bell, and both worked on a full-time basis for Bell); *Hammermill Paper Co. v. Rust Engineering Co.*, 430 Pa. 365, 243 A.2d 389 (1968) (court listed criteria for determining whether a person

was in the same employ as the injured person, such as: control of manner work is to be done; terms of agreement between the parties; skill required; right to terminate the employment). As evidence of Wakshul's employ by the City, Langan and Fleming have produced payroll stubs issued to Wakshul by the City of Philadelphia; the payroll stubs characterize Wakshul as a City employee working for an "agency" identified as "Court of Common Pleas." Officers' Motion for Summary Judgment, Exh. B. Langan and Fleming also point to a City employee I.D. card request filed by Wakshul in 1991. Officers' Motion for Summary Judgment, Exh. C. The only evidence to the contrary produced by Wakshul is an "Employee Informational Manual" from the First Judicial District. Pls.' Opp. to Officers' Motion for Summary Judgment, Exh. C ("Manual"). Wakshul points particularly to a statement in the Manual that "while your biweekly paycheck may be drawn on a City of Philadelphia Bank account, it is important that you remember that you are a Court employee and directly accountable to the Court." Manual, at 8. While this statement is a fine rhetorical admonition, it does not suffice to prove whose employee Wakshul was in legal terms. I find that the first element of the "co-employee" provision is satisfied: Wakshul, who, as a court officer, was paid by the City, was eligible for all City employment benefits, including Workers' Compensation, and carried City I.D., was "in the same employ" as Police Officers Fleming and Langan on July 13, 1995.

█ As to the third element, Pennsylvania courts have held that a wrong is "intentional" for purposes of the Workers' Compensation Act if it is either aimed at the employee because of personal, rather than business, *animus, see Sabot v. Dept. of Public Welfare*, 138 Pa.Cmwlth. 501, 506, 588 A.2d 597, 600 (1991), or if it is a type of wrong that an employee would not "normally expect" to be present in the workplace, *see McGinn v. Valloti*, 363 Pa.Super. 88, 525 A.2d 732, 735 (1987). The parties concur that the conflict was not directed at Wakshul personally, but

resulted from his actions as a court officer.[5] Whether the alleged wrongs here are ones that an employee would normally expect in the course of employment is a determination that turns, of course, on the nature of the employment. For example, in *Sabot*, the Commonwealth Court found that a psychiatric aide who was sexually assaulted by a patient could not bring suit against the hospital, absent any averment of personal animus, because such an assault was not outside the "scope" of what she might expect to happen at her employment. 138 Pa.Cmwlth. 501, 588 A.2d 597. Similarly, part of Gary Wakshul's job as a court officer entailed providing courtroom security, and, thus, a physical assault and any resulting emotional distress do not appear to be outside of the range of normal expectation. Therefore, I find that the third element is satisfied.

Given that Wakshul, Fleming, and Langan were "in the same employ" on July 13, 1995, that they were all acting in the course of their employment, and that the alleged acts were not intentional wrongs, I find that Gary Wakshul's tort claims fall within the scope of the "co-employee" rule of the Workers' Compensation Act, and, therefore, Fleming and Langan are immune from liability on these claims.

■■■ Furthermore, because these claims are barred, Karen Wakshul may not bring her derivative tort claim for loss of consortium against Fleming and Langan. Under Pennsylvania law, a wife's consortium claim derives only from the injured husband's right to recover in tort. *See Little v. Jarvis*, 219 Pa.Super. 156, 280 A.2d 617, 620 (1971). Given that summary judgment will be entered in

favor of Fleming and Langan on Gary Wakshul's tort claims, it follows that Mrs. Wakshul's consortium claim, which is derivative of the assault, battery, infliction of emotional distress, and conspiracy claims, must also fail. *See Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 438 (3d Cir.1986) (summarily dismissing consortium claim of plaintiff's spouse in absence of tort liability on part of defendants). "Moreover, there is no authority to permit spousal recovery for loss of consortium on violations of other spouse's civil rights." *Quitmeyer v. SEPTA*, 740 F.Supp. 363, 370 (E.D.Pa.1990). Accordingly, Officers Fleming and Langan's Motion for Summary Judgment is **GRANTED** as to the plaintiffs' state claims.

### C. § 1983 Claims

■■ In order to sustain a claim under § 1983, plaintiff must demonstrate that defendant, acting under color of state law, deprived plaintiff of a right or privilege secured by the Constitution or laws of the United States without due process of law. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 464 (3d Cir.1989).

### 1. Defendant the City of Philadelphia

■■ Gary Wakshul alleges that the City has violated his civil rights by a "complete failure to adequately discipline, train, or otherwise direct the defendant Officers," resulting in deliberate indifference to his constitutional rights to be free from excessive and unreasonable use of force, from a deprivation of liberty without due process, and from summary punishment.[6] Compl. ¶¶ 36–38. The City moves for summary judgment on Wak-

---

5. There is no indication that either Fleming or Langan knew Wakshul prior to this incident, nor that Wakshul knew Fleming or Langan. Fleming Dep., Plaintiffs' Opp. to City's Motion for Summary Judgment, Exh. E; Langan Dep., Plaintiffs' Opp. to City's Motion for Summary Judgment, Exh. F; Plaintiffs' Opp. to Officers' Motion for Summary Judgment, Exh. D, Notes of Testimony from Police Board of Inquiry, Wakshul Testimony. There is no indication from the record that either Fleming or Langan knew that Gary Wakshul was employed as a Philadelphia Police Officer from 1977 to 1986. Nor is there any indication that either Fleming or Langan was aware of Wakshul's past altercations with Philadelphia Police Officers in the courtroom.

6. Wakshul frames his constitutional claim as based on the First, Fifth, and Fourteenth Amendments; however, because, fundamentally, he is complaining about the use of excessive force, I will follow the directive of the Supreme Court and construe his claim as based on the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that "all claims that law enforcement officers have used excessive force — deadly or not — in the course of .... [a] 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonablenss' standard").

shul's § 1983 claim on the basis that Wakshul cannot demonstrate that the City had knowledge of any policy and practice pertaining to an alleged failure to train or discipline police officers.

 When a claim against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Wakshul here argues that the officers acted in accordance with a "custom" of failure to train or discipline. A municipal custom for § 1983 purposes is defined as "such practices of state officials ... [as are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Custom may be established by evidence of knowledge and acquiescence by high-level policy-makers. *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir.1989) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 n. 10, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Proof of a single incident by lower level employees acting under color of law does not suffice to establish either an official policy or custom. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Therefore, Wakshul must present evidence of knowledge by a City policy maker of a pattern or practice of inadequate training or discipline of police officers.

Wakshul's claim, in its strongest light, is that Officers Fleming and Langan used excessive force against him, they did so as the result of a pattern or practice of insufficient training and discipline of police officers by the City of Philadelphia, and that the City was previously aware of Fleming and Langan's propensity to such behavior. However, Wakshul has no proof either of insufficient training and discipline or that the City had knowledge of Fleming and Langan's propensity.

 An inadequacy of police training may serve as the basis for § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In order to survive summary judgment, Wakshul must establish that policymakers were aware of similar unlawful conduct in the past and tolerated it. *See Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir.1990) (holding that plaintiffs must simply establish a municipal custom coupled with causation in order to sustain a § 1983 action). If Wakshul could show that the City tolerated excessive use of force in the past by police officers, then the issue whether the City's inaction contributed to Fleming and Langan's decision to use excessive force in this instance would be a question of fact for a jury. *Id.* However, when asked in his deposition what evidence he had that officers were not properly disciplined or trained, Wakshul said that it was "obvious" from the incident at issue and from articles he had read in the newspaper. Wakshul Dep., City's Motion for Summary Judgment, Exh. B, at 62–68. Wakshul provided no evidence of past incidents. The City provides a copy of the Philadelphia Police Academy's training curriculum and lesson plans from a mandatory training course regarding the use of force. City's Motion for Summary Judgment, Exhs. C, D, E. These documents show that Philadelphia Police Officers receive training in the appropriate use of force. Wakshul has not come forward with any specific refutation of the City's evidence that police officers are fully trained as to the appropriate use of force. Furthermore, Wakshul, when asked at his deposition, could not articulate what training was lacking, or would have prevented the alleged incident. Wakshul Dep., City's Motion for Summary Judgment, Exh. B, at 68–72.

Courts have occasionally allowed specific incidents to act as proof of the existence of a municipal custom, where particular employees were known to act illegally and no steps were taken to rectify. For example, in *Beck v. City of Pittsburgh*, the Third Circuit held that where defendant police officers had been the subjects of five prior complaints of excessive use of force, there was sufficient evi-

dence of a pattern of violent and inappropriate behavior so as to allow the inference that the Pittsburgh Police Department knew of and tolerated the use of excessive force. 89 F.3d 966 (3d Cir.1996). Wakshul argues that Langan and Fleming are analogous to the police officers in *Beck*, because each had, prior to this incident, been the subject of internal affairs investigations and a party to lawsuits. Fleming Dep., Plaintiffs' Opp. to City's Motion for Summary Judgment, Exh. E.; Langan Dep., Plaintiffs' Opp. to City's Motion or Summary Judgment, Exh. F. However, the record provides no information as to the chronology, subjects, or contexts of these investigations. Unlike the factual situation in *Beck*, there is no indication that either Fleming or Langan had ever been investigated for excessive force. *See Beck*, 89 F.3d at 973. The City provides computer printouts showing that Officers Fleming and Langan received additional hours of training in the use of force during their employment. City's Motion for Summary Judgment, Exhs. F, G.[7]

There is no genuine issue of material fact as to whether the City deprived Wakshul of his constitutional rights by failing to adequately train, supervise, or discipline police officers. Accordingly, the City of Philadelphia's Motion for Summary Judgment is **GRANTED** as to the plaintiffs' § 1983 claim.

### 2. Defendants Fleming and Langan

Officers Fleming and Langan did not move for summary judgment on Wakshul's § 1983 claim that they violated his constitutional rights to be free from excessive use of force, from deprivation of liberty without due process, and from summary punishment. Accordingly, Wakshul's § 1983 claim against Fleming and Langan may go forward.

### III. Order

**AND NOW**, this day of March 1998, **IT IS ORDERED** that defendant Fleming and Langan's Motion for Summary Judgment (Docket # 11) is **GRANTED**: plaintiff's state law claims against Fleming and Langan are dismissed; the § 1983 claim against Fleming and Langan will go forward. Furthermore, defendant the City of Philadelphia's Motion for Summary Judgment (Docket # 12) is **GRANTED** as to all claims.

---

**7.** Note that upon learning of the incident at issue here, the Philadelphia Police Dept. investigated the allegation, and the investigation ultimately resulted in the discipline and suspension of Officers Fleming and Langan. City's Motion for Summary Judgment, Exhs. J & K.