Ross THOMAS, Jr., Plaintiff,

v.

CITY OF PITTSBURGH and Officer Charles of the City of Pittsburgh Department of Public Safety a/k/a Anthony L. Charles, Defendants.

No. Civ.A. 97–1819.

United States District Court,
W.D. Pennsylvania.

Jan. 28, 1999.

Clayton S. Morrow, Pittsburgh, PA, for Ross Thomas, Jr.

Jacqueline R. Morrow, Randall C. Marshall, Department of Law, Pittsburgh, PA, for City of Pittsburgh.

Bryan Campbell, Pittsburgh, PA, for Officer Charles.

### OPINION

DIAMOND, District Judge.

Plaintiff commenced this civil rights action seeking redress for the alleged use of excessive force during an investigatory stop on July 26, 1995, in the City of Pittsburgh, Pennsylvania. Plaintiff filed his complaint in the Court of Common Pleas of Allegheny County. Defendants filed a notice of removal pursuant to 28 U.S.C. § 1441 on the ground that the complaint asserts claims against defendants which arise under the laws and Constitution of the United States. Presently before the court is the City of Pittsburgh's ("City") motion for summary judgment. For the reasons set forth below, the motion will be denied.

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial,*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of

law. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting* Fed. R.Civ.P. 56(a), (e)) (emphasis in *Matsushita*). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The record as read in the light most favorable to plaintiff will support the following. On July 26, 1995, at approximately 7:00 p.m., plaintiff left the residence of an acquaintance and was traveling down Centre Avenue in the Hill District of Pittsburgh. Plaintiff went into a local establishment in order to obtain change to ride a bus. Upon exiting the establishment, officer Charles approached and seized plaintiff by the neck, ordered plaintiff to open his mouth and then forced plaintiff into a chain link fence. Plaintiff was ordered to lay face down on the ground. Plaintiff advised officer Charles that he could not get down on his right arm because of the presence of an intravenous fistula.[1] Officer Charles shoved plaintiff down on his right arm, causing significant injury, which ultimately resulted in hospitalization and surgery.

It is undisputed by the City that the record will support a § 1983 claim against officer Charles in his individual capacity for the use of excessive force. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person."); *Groman v. Township of Manalapan*, 47 F.3d 628, 633–34 (3d Cir.1995) ("A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution.").

---

1. Plaintiff has suffered from renal kidney failure since 1986 and requires dialysis treatment approximately three times per week, and the fistula is used in conjunction with this treatment.

The City moves for summary judgment on the ground that the record lacks sufficient evidence to sustain a finding of municipal liability under *Monell v. Department of Social Services City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In support of this contention the City relies upon plaintiff's response to certain interrogatories and argues that plaintiff lacks sufficient evidence to sustain a finding that the City had a custom or policy which proximately caused plaintiff's asserted injury. In response, plaintiff argues that materials received from the City after plaintiff responded to the interrogatories provide a sufficient evidentiary basis to support *Monell* liability against the City.

It is well settled that "[a] government entity may not be held liable under section 1983 under the *respondeat superior* doctrine." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990). Instead, § 1983 liability may be imposed against a municipality only where it is proved "that the municipality itself supported the violation of [the] rights alleged." In other words, a municipality "can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 970 (3d Cir.1996) (*citing Monell*, 436 U.S. at 694, 98 S.Ct. 2018); *see also Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (Municipal policymakers' "continued adherence to [a policy or practice] that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability.") (*citing City of Canton v. Harris*, 489 U.S. 378, 390 n. 10, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

The case law has distinguished between liability based upon a municipal custom as opposed to a municipal policy. *Beck*, 89 F.3d at 970 (*citing Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 & n. 10, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). The United States Court of Appeals for the Third Circuit has explained this distinction as follows:

Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law.

*Beck*, 89 F.3d at 971 (*quoting Andrews*, 895 F.2d at 1480); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990). Custom also may be established by evidence of knowledge and acquiescence. *Beck*, 89 F.3d at 971 (*citing Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir.), *cert. denied*, 492 U.S. 919, 109 S.Ct. 3244, 106 L.Ed.2d 591 (1989)).

In the instant action plaintiff alleges that the City tacitly adopted a custom of tolerating the use of excessive force by its police officers and failed to take proper precautions to prevent future violations of citizens' Fourth Amendment rights. Plaintiff indicates that he will support his claim against the City by, *inter alia*, calling two witnesses who testified in *Beck* regarding the City's internal methods of investigating civilian complaints against the City's police officers and introducing a file containing numerous complaints against officer Charles.

In *Beck* the plaintiff commenced a § 1983 action against a City police officer and the City for police brutality and the use of excessive force during an arrest. *Beck*, 89 F.3d at 967. The case proceeded to trial. At the close of the plaintiff's case against the City, the City moved for judgment as a matter of law and the district court granted the motion, holding that the plaintiff had presented insufficient evidence for a reasonable jury to find that the City tacitly had established a policy or custom which authorized its police officers to use excessive force. The United States Court of Appeals for the Third Circuit reversed. *Id.* at 967–68.

Beck, a rehabilitation counselor for the Epilepsy Foundation of America, had been arrested in the early morning hours of October 31, 1993, when he and two college friends left a Halloween party on the South Side of Pittsburgh. A City police officer stopped Beck after the car he was operating traveled

erratically across a parking lot. Despite Beck's alleged compliance with all of the officer's directives, Beck was subjected to excessive force and obscene language. Beck subsequently filed a formal civilian complaint with the Office of Professional Standard ("OPS"), the City department responsible for investigating civilian complaints.

At trial Beck called Carla Gedman, an assistant chief of OPS who supervised all OPS employees and investigators and was responsible for forwarding all OPS findings up through the chain of command in the police department. Gedman described the fact-finding functions of OPS and the various categories under which civilian complaints were resolved. She explained the process by which OPS gathered information, analyzed that information and published its findings. Specifically, Gedman testified that OPS approached each complaint against a police officer as a separate, independent event and thus, "OPS cabins each complaint and will not consider prior conduct of or prior complaints against the officer in determining the outcome of the pending complaint." *Id.* at 969. Gedman also "testified that OPS [had] no formal policy or mechanism in place to track prior complaints" and that OPS did "not report patterns of cases to the police bureau." Gedman further indicated that although she had discretion to report a series of incidents to the chain of command regarding a particular officer, there was no formal system for determining when or what particular conduct justified such a report. *Id.* Beck also introduced excerpts from the deposition of Charles Moffit, the first person in the police department chain of command to review OPS findings, who indicated that the department "will only take an officer's prior conduct into account in reviewing an OPS finding if OPS has sustained a complaint against the officer for that conduct."

Beck also introduced into evidence four reports filed prior to the incident in which he was involved wherein civilians had filed complaints with OPS charging the officer with excessive force and abusive language, as well as Beck's complaint and a complaint filed subsequent to the incident forming the basis for Beck's claim. None of the complaints had been sustained and none of them had resulted in discipline. *Id.* at 970. There was evidence, however, that the officer in question had been disciplined when a fellow officer complained that that officer had used abusive language, which was similar to that alleged in the civilian complaints. There also was evidence from 1991 and 1994 annual OPS year-end reports which indicated that use of force had been an issue in the past, that actual discipline for excessive force was low and that other metropolitan police departments had formalized reporting mechanisms for tracking, verifying and objectively evaluating such complaints. *Id.*

In assessing the above evidence, the court of appeals opined that the unsustained civilian complaints against the officer evidenced a series of complaints of a similar nature containing specific information pertaining to the use of excessive force and verbal abuse, of which the police department chain of command had knowledge, and that "under the sterile and shallow OPS system of investigation, each complaint was insulated from other prior and similar complaints and treated in a vacuum." *Id.* at 973. The court also observed that the OPS system of investigation "rendered weightless" testimony of witnesses to the incidents where the particular witness had accompanied the complainant. Against this backdrop, the court concluded that the similar complaints filed during a narrow period of time against the officer provided a sufficient basis for a reasonable jury to infer that the chief of police and his department knew or should have known of the officer's violent behavior in arresting citizens, and that a jury likewise could infer that a tacitly adopted custom of tolerating the use of excessive force by certain officers had been a substantial factor in causing a violation of Beck's Fourth Amendment rights. *Id.* at 973 & 976.

Plaintiff has submitted a 1997 final report concerning the incident in question authored by the Office of Municipal Investigations ("OMI") (formerly OPS). The report lists fourteen different complaints filed against officer Charles between 1986 and 1995. Six of the complaints charged the use of excessive force. OMI indicated that "two of the use of force depositions were not sustained, two were sustained, one was closed and one was exonerated." Thus, at least two of the

use of excessive force charges proved to be accurate. In addition, five of the other complaints charged verbal abuse or inappropriate conduct toward the public.[2] Plaintiff has indicated he will introduce the specifics of each of these incidents at trial. In addition, plaintiff has submitted an interrogatory wherein the City indicated that there was no change in its methods of monitoring civilian complaints between the Fall of 1993 and the Summer of 1995.

The City's primary complaint appears to be that plaintiff has not produced Gedman's and Moffit's prior testimony in this action, but merely has indicated that they will be subpoenaed and requested to acknowledge the testimony they provided in *Beck.* The City contends that the failure actually to produce the testimony in the instant record entitles it to summary judgment.

■ While it may have been better practice for plaintiff to generate excerpts from the trial record in *Beck* and introduce the same in the instant action, plaintiff has sustained his burden of demonstrating that material issues remain. It has long been recognized in this jurisdiction that a non-movant may rely on material or evidence which has not been reduced to admissible evidence as long as it reasonably appears that such material can be reduced to a form of admissible evidence at trial. *J.F. Feeser, Inc. v. Serv-A–Portion, Inc.,* 909 F.2d 1524, 1542 (3d Cir.1990) (*citing Celotex,* 477 U.S. at 324, 106 S.Ct. 2548). Thus, while Gedman's and Moffit's admissions in *Beck* have not been reduced to admissible evidence in the instant proceeding, there is a reasonable likelihood that the testimony proffered by those two in *Beck* can be introduced in a form of admissible evidence at trial. In addition, discovery in the instant action (when read in the light most favorable to plaintiff) indicates that there was no substantive change in the manner by which OPS, and ultimately the City, tracked and disposed of civilian complaints from 1986 through the Summer of 1995. Finally, the frequent and almost systematic civilian complaints against officer Charles charging him with excessive force, two of which were sustained under the City's internal methods of investigation, as well as those pertaining to verbal abuse (all of which continued to occur over a substantial period of time) ultimately may support a finding that an adequate system of investigation would have detected a pattern of abuse by officer Charles and the need for disciplinary action to avoid future conduct.

It follows that given the above, plaintiff may be able to produce at trial sufficient evidence from which a reasonable factfinder could determine that City officials had knowledge of and were deliberately indifferent to a developed practice of using excessive force and that this tacitly adopted custom was a substantial factor in causing the alleged violation of plaintiff's Fourth Amendment rights. Because plaintiff has not introduced significant portions of his actual evidence into the record at this juncture, the City's motion for summary judgment will be denied without prejudice to its right to seek judgment as a matter of law on the same grounds at the close of plaintiff's case-in-chief.

---

**2.** The remaining complaints charged leaving the City while on duty, failure to abide by orders and law and theft.