John REITZ, Plaintiff,

v.

David L. PERSING, Charles McAndrews, William Mackley, William Rohrbach, Jack C. Buhner, Everett Walters, Individually; Donald Morgan; and the City of Sunbury, Defendants.

No. 1: CV–93–0559.

United States District Court, M.D. Pennsylvania.

Aug. 25, 1993.

**412**

Don Bailey, Harrisburg, PA, for plaintiff.

Michael Apfelbaum, Apfelbaum, Apfelbaum & Apfelbaum, Sunbury, PA, for all defendants, except defendant Donald Morgan.

Robert J. Muolo, Wiest, Wiest, Saylor & Muolo, Sunbury, PA, for defendant Morgan.

### *MEMORANDUM*

McCLURE, District Judge.

### BACKGROUND:

Plaintiff John Reitz initiated this action with the filing of a complaint on April 15, 1993. Plaintiff alleges that defendants conspired to deprive him of his First Amendment rights to free speech and of his property interest in continued employment in violation of due process.

Plaintiff worked as a parking ticket officer for the City of Sunbury until he was dismissed on July 6, 1992. He alleges that during his employment, defendants Police Chief McAndrews, Mayor Persing, Councilmen Mackley, Rohrbach and Buhner, and Morgan (the only defendant not a city official) pressured him to discriminate in issuing parking tickets so as to avoid citing their friends. Plaintiff alleges that his employment was terminated because he objected to such unequal enforcement of the law, made comments to reporters regarding parking citations in Sunbury, and planned to file criminal charges against defendant Morgan. Based on these allegations, plaintiff asserts federal claims under the Civil Rights Act, 42 U.S.C. § 1983 (Count I), a pendent state claim of wrongful discharge against the City of Sunbury (Count II), and a pendent state claim of civil conspiracy against all defendants (Count III).

Before the court is a motion made by defendants Persing, McAndrews, Mackley, Rohrbach, Buhner, Walters, and the City of Sunbury to dismiss the claims against them pursuant to Fed.R.Civ.P. 12(b)(6) and in the alternative for a more definite statement pursuant to Fed.R.Civ.P. 12(e). In his separate motion, defendant Morgan moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) and in the alternative for summary judgment. In addition, defendant Morgan moves to dismiss for lack of subject matter jurisdiction and for failure to satisfy the pleading requirements of Fed.R.Civ.P. 8(a)(2).

For the reasons discussed below, we will grant defendants' motions with respect to the due process claim under 42 U.S.C. § 1983 and we will grant defendant City of Sunbury's motion to dismiss the portion of plaintiff's complaint seeking punitive damages under 42 U.S.C. § 1983. However, we will deny defendants' motions with respect to the remaining federal and state claims and grant them leave to file an answer within twenty days.

### DISCUSSION:

### I. MOTION TO DISMISS PURSUANT TO FED.R.CIV. 12(b)(6)

#### 1. 12(b)(6) Standard

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) admits the well-pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976). "It is the settled rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Leone v. Aetna Cas. & Sur. Co.*, 599 F.2d 566, 567 (3d Cir.1979) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The complaint must be read in a light most favorable to the plaintiff with every doubt resolved in plaintiff's favor. *In re Arthur Treacher's Franchise Litigation*, 92 F.R.D. 398, 422 (E.D.Pa.1981).

## 2. Failure to Allege Deprivation of Property Rights in Violation of Due Process

■ In their briefs in support of their motions to dismiss, defendants assert that plaintiff has failed to allege a deprivation of any property right in violation of due process. More specifically, defendants assert that plaintiff was an at-will employee of the City of Sunbury and as such had no property interest in continued employment since under the at-will doctrine he could be dismissed for any or no reason at all.

■ In order to implicate a property interest protected by procedural due process, one must have more than a need, desire or expectation of it. "He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In the area of public employment, the Supreme Court has held that a property interest exists when one is a tenured employee or is working under the terms of a contract. *See Slochower v. Board of Education*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). Plaintiff's complaint, however, alleges no such tenured or contractual employment.

■ In the absence of a contract or tenured status, "a property interest in employment can, of course, be created by ordinance, or by an implied contract . . . however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Applying Pennsylvania state law, the Third Circuit has noted that "[a]s a rule, public employees in Pennsylvania have at-will status and are subject to summary removal by the employing agency." *Cooley v. Pennsylvania Housing Finance Agency*, 830 F.2d 469, 471 (3d Cir. 1987).

### a. Effect of Non–Uniform Personnel Policy

■ While accepting this general rule, plaintiff's brief in opposition asserts that since the city's Non–Uniform Personnel Policy includes a "just cause" provision, it gives him a property interest in continued employment under Pennsylvania law. The Pennsylvania Superior Court has held that such a policy handbook can be enforceable against an employer but only if "a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule." *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 545 A.2d 334, 337 (1988). *See Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830 (1986); *Reilly v. Stroehman Bros. Co.*, 367 Pa.Super. 411, 532 A.2d 1212 (1987); *DiBonaventura v. Consolidated Rail Corporation*, 372 Pa.Super. 420, 539 A.2d 865 (1988).

Much like the instant case, plaintiffs in both *Scott, supra,* and *Martin, supra,* asserted that a policy handbook containing a similar "just cause" provision evidenced an intent to supplant the at-will rule. The *Scott* court held, however, that in light of the rest of the handbook, the employer did not intend to supplant the at-will rule. Important to the Superior Court were sections of the handbook setting forth conduct and behavioral standards that if violated "could" result in termination. The Superior Court found that the use of such language suggests that:

> discretion is left to the employer as to whether the ultimate sanction of discharge should be applied in a given instance . . . [which] is completely at odds with any notion that the provision in question should be read to mean that an employee could be discharged except for objective just cause.

*Scott v. Extracorporeal, Inc., supra,* 545 A.2d at 337–38.

Further, the *Martin* court found that a handbook that cites general offenses such as "dishonesty" fails to overcome the at-will presumption as such general terms must be read to include the phrase " . . . in the judgment of the employer." *Martin v. Capital Cities Media, Inc., supra,* 511 A.2d at 838. In reserving some discretion for the employer, a policy handbook serves merely an informational function, setting forth what will and will not be tolerated by the employer; it does not convert an at-will relationship into a con-

tractual one nor give an at-will employee any entitlement to continued employment. *Id.*

Applying this analysis to the instant case, we note that the policy handbook to which the plaintiff refers includes similar elements of discretion left to the employer. In the section labelled "Conditions of Employment," the handbook lists several offenses, including the general offense of "dishonesty," for which "[r]eprimand or termination *may* result." Non–Uniform Personnel Policy, Plaintiff's Brief in Opposition, Exhibit A, p. 9 (emphasis added). Such discretion left to the employer evidences an intent not to supplant the at-will rule.

■ The Introduction to the Non–Uniform Personnel Policy furthers this conclusion as it states that:

> this policy does not constitute a contract with any employee or group of employees and if items in this policy are found to be in conflict with any legal contract or with any law, the contract or law will prevail.

*Id.* at 2. "The intent to overcome the at-will presumption must be stated with clarity." *Martin v. Capital Cities Media, Inc., supra,* 511 A.2d at 838. The Non–Uniform Personnel Policy fails to do so. On the contrary, it reflects that the employer intends to retain and apply the at-will rule. Accordingly, it creates no property interest in continued employment.

### b. *Public policy exception to the at-will doctrine*

■ Plaintiff also asserts that he has a property interest in his employment by right of Pennsylvania's public policy exception to the at-will doctrine. This exception, stemming from *Geary v. United States Steel Corp.,* 522 Pa. 86, 319 A.2d 174 (1974) and its progeny, provides that exceptions to the at-will doctrine may be recognized "when discharges of at-will employees would threaten clear mandates of public policy." *Clay v. Advanced Computer Applications,* 456 Pa. 171, 559 A.2d 917, 918 (1989). This exception, however, creates no property interest in what is otherwise at-will employment. Rather, the public policy exception allows an employee whose discharge threatens public policy to remedy the improper dismissal by

bringing a tort action in wrongful discharge. *Scott v. Extracorporeal, Inc., supra,* 545 A.2d at 336 (citing *Veno v. Meredith,* 357 Pa.Super. 85, 515 A.2d 571 (1986)). Thus, no property interest in continued employment is created, only a state remedy in wrongful discharge.

In *Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699 (3d Cir.1988) the Third Circuit noted that:

> [t]he public policy exception has been most frequently applied under Pennsylvania law when the discharge is a result of the employee's compliance with or refusal to violate the law. *See, e.g., Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (3d Cir.1979) (cause of action for wrongful discharge for refusal to submit to a polygraph test when statute forbid such testing); *Shaw v. Russell Trucking Line, Inc.,* 542 F.Supp. 776 (W.D.Pa.1982) (for reporting motor vehicle violations); *McNulty v. Borden,* 474 F.Supp. 1111 (E.D.Pa.1979) (for refusing to violate antitrust laws); *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978) (for serving on jury duty). . . .

*Id.* at 701–02. In determining whether the instant case is one that should likewise give rise to a state claim for wrongful discharge, we must be sensitive to doctrinal trends in Pennsylvania common law and attempt to predict "how the state's highest court would decide were it confronted with the problem." *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 661–62 (3d Cir.1980).

Much of the common law authority on Pennsylvania's public policy exception has been developed by the Pennsylvania Superior Court, whose decisions indicate that the exception is limited to terminations of employment which result in "a violation of a clearly defined mandate of public policy which 'strikes at the heart of a citizen's social right, duties and responsibilities.'" *Yetter v. Ward Trucking Corp.,* 401 Pa.Super. 467, 585 A.2d 1022, 1026 (1991) (citations omitted). Although the Superior Court has relied heavily on statutory evidence of public policy, it has noted that "[a]bsent legislation, the judiciary must define the cause of action in case-by-

case determinations." *Id.* (citing *Cisco v. United Parcel Services, Inc.*, 328 Pa.Super. 300, 476 A.2d 1340, 1343 (1984) (citations omitted)).

In fact, the Third Circuit has rejected an argument that only violations of statutorily recognized public policy can give rise to a claim of wrongful discharge under Pennsylvania law. *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 898–99 (3d Cir.1983). The *Novosel* court, in predicting how the Pennsylvania Supreme Court would rule on a claim brought by an employee who alleged that he was wrongfully discharged in violation of his First Amendment rights, recognized that:

 a cognizable expression of public policy may be derived ... from either the First Amendment of the United States Constitution or Article I, Section 7 of the Pennsylvania Constitution.... [T]he protection of an employee's freedom of political expression would appear to involve no less compelling a societal interest than the fulfillment of jury service or the filing of a workers' compensation claim.

*Id.* at 899.

 ▊ In the instant case, plaintiff alleges that defendants violated public policy by terminating his employment for speaking to reporters regarding parking citations in Sunbury. Given *Novosel*, this alleged violation of plaintiff's First Amendment rights (and his rights to free communication of thoughts and opinions under Article I, Section 7 of the Pennsylvania Constitution) is sufficient to invoke Pennsylvania's public policy exception and survive a motion to dismiss.

With respect to the rest of plaintiff's allegations, we, like the *Novosel* court, must predict whether Pennsylvania's highest court would recognize a cognizable expression of public policy in favor of the equal enforcement of the law. Mindful of the trend in the Superior Court to rely on statutory evidence of a recognized public policy, we note that defendants' actions, if proven, would constitute the obstruction of the administration of law in violation of 18 Pa.Cons.Stat.Ann. § 5101. This statute states:

 [a] person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.Cons.Stat.Ann. § 5101. This legislation evidences a public concern that the administration of law should not be intentionally obstructed or impaired.

Even in the absence of such legislation, we believe that the Pennsylvania Supreme Court would find that equally enforcing the law without prejudice or preferential treatment involves "no less compelling a societal interest than the fulfillment of jury service or the filing of a workers' compensation claim." *Novosel v. Nationwide Ins. Co., supra,* 721 F.2d at 899. Discharging a parking ticket officer for refusing to enforce selectively the law threatens such an interest. Accordingly, plaintiff's complaint alleges sufficient facts to state a claim for wrongful discharge. In addition, since plaintiff's complaint alleges that two or more persons agreed to cause his wrongful discharge, it is likewise sufficient to state a claim for civil conspiracy. *Larsen v. Philadelphia Newspapers, Inc.*, 411 Pa.Super. 534, 602 A.2d 324, 339 (1991) (Olszewski, J., concurring and dissenting) (citing *Slaybaugh v. Newman*, 330 Pa.Super. 216, 479 A.2d 517, 519 (1984)).

While plaintiff's complaint successfully states claims for wrongful discharge and civil conspiracy to cause his wrongful discharge, it fails to allege a viable claim for deprivation of plaintiff's property rights since no property interest has been implicated. Accordingly, defendants' motions with respect to plaintiff's due process claim will be granted.

### 3. Sufficiency of Pleadings

 ▊ With respect to plaintiff's First Amendment claim, defendants note that courts of this jurisdiction have required greater specificity in the pleading of civil

rights actions. Recently, however, the Supreme Court held that the notice pleading requirement of Fed.R.Civ.P. 8 also applies to civil rights complaints. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In light of *Leatherman,* plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

Although defendant Morgan asserts that plaintiff has failed even to meet this standard, we disagree. Plaintiff sets forth sufficient factual allegations which, if proven, show that he is entitled to relief for the deprivation of his First Amendment rights as well as the pendent state claims. While the complaint does not set forth all of the details surrounding the alleged violations of his First Amendment rights, it is sufficiently specific to permit defendants to prepare a responsive pleading in defense thereof.

For these reasons, defendants' alternative motion for a more definite statement will be denied, as will defendant Morgan's motion to dismiss for failure to comply with Fed. R.Civ.P. 8(a)(2).

### 4. *Private Individual as a Co-conspirator*

■ In his brief, defendant Morgan asserts that as a private individual he did not and could not act under the color of any state law sufficient to give rise to a claim against him under 42 U.S.C. § 1983. While civil rights claims cannot be brought against private individuals in general, the Supreme Court has held that when the actions of private individuals are substantially interwoven into a symbiotic relationship with a state actor, the acts of the individual can reasonably be said to be the acts of the political state. *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

Plaintiff does aver that such a relationship existed between defendant Morgan and the other defendants in the nature of a civil conspiracy to deprive him of his First Amendment rights. Plaintiff alleges, with respect to defendant Morgan, that upon learning of the statements plaintiff made to local reporters and of plaintiff's plans to file criminal charges against him, Morgan conspired with the other defendants to terminate plaintiff's employment with the City of Sunbury. Such factual allegations, if proven, would render Morgan culpable as a co-conspirator with city officials in violating plaintiff's civil rights. As such, plaintiff's § 1983 claim against Morgan is appropriate and his factual allegations are sufficient to survive a motion to dismiss.

### 5. *Absolute Immunity*

■ Defendants Persing, McAndrews, Mackley, Rohrbach, Buhner and Walters assert that they are absolutely immune from the claims brought against them as they were acting at all times in a legislative capacity. In support of their motion, the defendants cite a Third Circuit decision in which members of a municipal council, the mayor and the borough attorney were granted absolute immunity with respect to certain legislation enacted by the borough council. *Aitchison v. Raffiani,* 708 F.2d 96 (3d Cir.1983). The Court of Appeals, however, narrowly restricted this immunity to actions which were indeed legislative in nature. For instance, the councilmen acted legislatively only when voting to enact legislation; the mayor acted legislatively solely with respect to his veto power; and, the borough attorney acted legislatively only in his limited role as a legal aide in the course of legislative drafting. *Id.* at 99. When acting outside of these limited legislative duties and actions, such officials do not enjoy the protection of absolute immunity.

Accordingly, we agree with an Eastern District decision which noted that "[m]unicipal employment decisions are administrative and not legislative in nature and do not enjoy immunity from suit." *Freeman v. McKellar,* 795 F.Supp. 733, 740 (E.D.Pa.1992) (citing *Detz v. Hoover,* 539 F.Supp. 532, 534 (E.D.Pa.1982)). Given this rationale, the decision to discharge the plaintiff was an administrative decision. Defendants were not acting in any legislative capacity and, consequently, enjoy no immunity from the claims presently brought against them.

### 6. Municipality's Liability for Punitive Damages

■ While municipalities can be sued for violations of 42 U.S.C. § 1983, *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court has held "that a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Facts Concert, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Concerned with burdening the taxpayer with punitive damages imposed against a municipality, the Supreme Court found that "considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials." *Id.* See also *Fletcher v. O'Donnell,* 867 F.2d 791 (3d Cir.1989).

Accordingly, the portion of plaintiff's complaint seeking punitive damages against the City of Sunbury under 42 U.S.C. § 1983 will be dismissed.

### II. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

■ Since there is a federal question under 42 U.S.C. § 1983 before the court, this court has jurisdiction pursuant to 28 U.S.C. § 1331 as well as 28 U.S.C. 1343(3) and (4). This court has and retains jurisdiction over the pendent state claims pursuant to 28 U.S.C. § 1367.

### III. ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Since the court did not look beyond the pleadings in ruling on this motion, a grant of summary judgment is not appropriate at this time.

\*     \*     \*

An order will be issued consistent with this memorandum.

### ORDER # 1

For the reasons stated in the accompanying memorandum,

**IT IS ORDERED THAT:**

1. Defendants' motions to dismiss (Record Document Nos. 3 and 6) are granted with respect to the due process claim under 42 U.S.C. § 1983.

2. Defendant City of Sunbury's motion to dismiss the portion of plaintiff's complaint seeking punitive damages against it is granted.

3. Defendants' motion to dismiss and in the alternative for a more definite statement (Record Document No. 3) is denied with respect to the remaining federal and state claims.

4. Defendant Morgan's motions to dismiss and in the alternative for summary judgment (Record No. 6) are denied with respect to the remaining federal and state claims.

5. Defendants are granted leave to file an answer within twenty days from the date of this order.