**Lamar WHITE and Lois White, Petitioners,**

v.

**PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, an agency of the Commonwealth of Pennsylvania, and Bradley Mallory, Secretary of Transportation, Respondents.**

Commonwealth Court of Pennsylvania. .

Argued July 21, 1999.

Decided Aug. 30, 1999.

Reconsideration Denied Sept. 29, 1999.

Thomas Alan Linzey, Shippensburg, for petitioners.

Christopher J. Clements, Harrisburg, for respondents.

Before COLINS, President Judge, McGINLEY, J., and KELLEY, J.

COLINS, President Judge.

Before the Court are preliminary objections filed by the Department of Transportation (PennDOT), a motion for summary relief filed by Lamar and Lois White, and PennDOT's motion to strike certain exhibits attached to the Whites' brief in support of their motion for summary relief.

This action arises out of PennDOT's plan to construct a new interchange on Interstate Rte. 81 near Chambersburg, Franklin County. The Whites own farmland that will be affected by the proposed construction. In June 1994, the Whites received a notice that in planning for highway improvements, PennDOT might need to enter onto their property to conduct surveys and tests; the notice stated that PennDOT would notify them personally, if possible, before any entry. The Whites allege that they received no subsequent notice of entry. Sometime after receiving the notification of possible entry, the Whites refused entry to PennDOT employees, and PennDOT has made no further attempt to access the Whites' property.

In May 1999, the Whites filed their complaint in this Court's original jurisdiction alleging that the construction of the interchange will result in economic harm and will result in the direct taking of farmland in active agricultural production. The Whites also allege that they will be harmed by PennDOT's entry onto their property prior to the initiation of formal condemnation proceedings. Specifically, they allege that by permitting entry, they will relinquish their right to sue PennDOT for trespass; that their active farmland will be hindered by PennDOT's surveying activities and that their machinery had already been damaged by survey stakes placed by PennDOT; and that they will be forced to relinquish their property rights against unpermitted invasions.

The Whites' complaint alleges that PennDOT violated the Agricultural Security Areas Law (ASA Law)[1] in that PennDOT failed to submit its condemnation proposal for approval of the Agricultural Lands Condemnation Approval Board (ALCAB). The Whites assert that without ALCAB's approval, PennDOT lacks the power to condemn their farmland. The Whites allege that PennDOT has expressed its position that the Whites' farmland is not protected by the ASA Law and that it will not seek ALCAB's approval. The Whites seek the following relief: 1) a declaration that PennDOT's activities will adversely affect the Whites; 2) a declaration that without ALCAB approval, PennDOT does not have the power to condemn their property; 3) an injunction prohibiting any further commitment of resources to the project or its continued design and construction until PennDOT obtains ALCAB approval; 4) attorney's fees; and 5) additional appropriate relief.

**Preliminary Objections**

In response to the Whites' complaint, PennDOT filed the following preliminary objections: 1) the Whites have an adequate remedy at law under Section 409 of the Eminent Domain Code[2] for any damages caused by PennDOT's entry onto their land for the purpose of surveying and testing; 2) the Whites fail to state a claim for which relief can be granted in that ALCAB has no jurisdiction over PennDOT's power to condemn or its authority to enter prior to condemnation under the Eminent Domain Code; 3) the Whites have an adequate remedy at law under the Eminent Domain Code, which provides the exclusive method for challenging a condemnor's power or right to condemn; 4) the Whites lack standing to sue under the ASA Law, which does not provide for a private cause of action to redress violations, and the Whites have failed to exhaust administrative remedies by requesting ALCAB to determine their claims or to

---

1. Act of June 30, 1981, P.L. 128, *as amended,* 3 P.S. §§ 901–915.

2. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–409.

refer the matter to the Attorney General under the ASA Law.

First we address PennDOT's objections (numbered I and III) that the Whites have an adequate remedy at law under the Eminent Domain Code. PennDOT asserts first that all challenges to the power or right to condemn must be brought as preliminary objections to the declaration of taking, and second, that the Whites have a remedy under the Eminent Domain Code for any damages caused by PennDOT's entry prior to condemnation.

■ Although PennDOT correctly states that a challenge to its power or right to condemn must be brought under the Eminent Domain Code, we addressed a matter factually similar to the Whites' in *In re Legislative Route 58018*, 31 Pa. Cmwlth. 275, 375 A.2d 1364 (1977), wherein we stated that when the challenge is to a collateral procedure to be followed as part of highway planning—and not a challenge to the adequacy of security, to the declaration of taking itself, or to a matter directly related to the declaration—the matter is justiciable only by invocation of Commonwealth Court's original jurisdiction in equity. In the *Route 58018* case, the condemnees challenged PennDOT's failure to comply with statutory procedures requiring a determination of the project's social, esthetic, and environmental effects as a limitation upon its power to condemn. In the present case, the Whites challenge PennDOT's failure to comply with statutory procedures requiring an ALCAB review and determination. As in *Route 58018*, the Whites' challenge is to a collateral procedure to be followed as part of highway planning, and not a challenge to a declaration of taking or to a matter directly related to the declaration. *In re Condemnation of .036 Acres, More or Less, of Land Owned by Wexford Plaza Associates*, 674 A.2d 1204 (Pa.Cmwlth. 1996), cited by PennDOT in its objections, has no bearing in this case because the issue of the condemnor's failure to seek ALCAB approval in *Wexford Plaza* was determined to have been waived. Because the Whites have no adequate remedy at law to challenge PennDOT's failure to seek ALCAB approval, PennDOT's Objection III is overruled.

Section 409 of the Eminent Domain Code provides that prior to the filing of the declaration of taking, a condemnor "shall have the right to enter upon any land or improvement which it has the power to condemn, in order to make studies, surveys, tests, soundings and appraisals, provided that the owner . . . has been notified ten days prior to entry on the property." 26 P.S. § 1–409. Section 409 also provides that "[a]ny actual damages sustained by the owner of a property . . . entered upon . . . shall be paid by the condemnor and shall be assessed by the court or viewers . . . ." *Id.* For this reason, we conclude that the Whites have a remedy at law for any damages that may be caused by PennDOT's entry onto their property, and PennDOT's Objection I is sustained.

■ Next we address PennDOT's Objection IV challenging the Whites' standing and failure to exhaust administrative remedies. PennDOT asserts that ALCAB has the statutory authority to seek enforcement of the ASA Law through the Attorney General's office and that the ASA Law does not provide a private right of action for violations of the law. The Whites admit that the law does not provide a private right of action and that ALCAB may seek its enforcement. In reply, the Whites assert that the remedy of ALCAB's seeking enforcement is not available until PennDOT files a declaration of taking; even so, they are not attempting to enforce the ASA Law, rather they seek to enjoin PennDOT from trespassing on their property. We agree with the Whites that the ASA Law does not provide an administrative remedy that is available to them; therefore, PennDOT's Objection IV is overruled.

Finally, PennDOT's Objections II and V are in the nature of a demurrer. Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. *Simmons v. Township of Moon*, 144 Pa.Cmwlth. 198, 601 A.2d 425, 428 (1991).

> Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. The test ... is whether it is clear and free from doubt ... that the pleader will be unable to prove facts legally sufficient to establish his right to relief.

*Bower v. Bower*, 531 Pa. 54, 57, 611 A.2d 181, 182 (1992) (citation omitted). "A demurrer admits every well-pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom" and cannot be sustained unless the complaint indicates on its face that the claim cannot be sustained. *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 623, 470 A.2d 86, 91 (1983) (quoting *Gekas v. Shapp*, 469 Pa. 1, 5, 364 A.2d 691, 693 (1976)).

Because it is not clear, upon the facts averred, that the law will not allow the plaintiffs to prevail under the ASA Law under their assertion that PennDOT must first seek ALCAB approval before proceeding to condemn the Whites protected farmland, PennDOT's Objection V is overruled. Objection II states a demurrer under Section 409 of the Eminent Domain Code, 26 P.S. § 1–409; and because it is clear that ALCAB approval is not a limitation on PennDOT's right to enter for the purposes of public planning studies, Objection II is sustained. For the same reason, PennDOT's Objection VI is also sustained.

**Motion for Summary Relief**

Having dismissed on preliminary objections the Whites' claim that Penn-DOT may not enter onto their property prior to obtaining ALCAB approval, we will address their motion for summary relief only in the context of their remaining claim, i.e., whether PennDOT must seek ALCAB review of the interchange project before it files a declaration of taking.

Any time after the filing of a petition in our original jurisdiction, this Court may upon application enter judgment if the right of the applicant thereto is clear. Pa. R.A.P. 1532(b). Summary relief can be granted only where no material fact is in dispute and where the right to relief is clear. *Jannetta v. Knoll*, 129 Pa.Cmwlth. 458, 566 A.2d 330, *affirmed*, 527 Pa. 358, 591 A.2d 1052 (1991).

Section 2003(e)(1) of the Administrative Code of 1929 [3] empowers PennDOT to condemn land for highways and other transportation purposes.[4] Section 409 of the Eminent Domain Code, 26 P.S. § 1–409, authorizes its entry onto property for the purposes of public planning studies. AL-CAB, created and empowered by Section 306 of the Administrative Code of 1929, 71 P.S. § 106,[5] has jurisdiction over condemnation for "[h]ighway purposes, but not including activities relating to existing highways such as, but not limited to, widening roadways, the elimination of curves or reconstruction." 71 P.S. § 106(d)(1).

Before condemning agricultural lands that are being used for productive agricultural purposes, PennDOT "shall request [ALCAB] to determine that there is no reasonable and prudent alternative to the utilization of such lands for the project." Section 306(b) of the Administrative Code, 71 P.S. § 106(b). ALCAB may approve a highway project only if it de-

---

3. Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 513(e)(1).

4. "The Department of Transportation ... shall have the power, and its duty shall be:
    ....
    (e)(1) To acquire, by gift, purchase, condemnation or otherwise, land ... for all transportation purposes...." 71 P.S. § 513(e)(1).

5. Added by Section 1 of the Act of December 7, 1979, P.L. 478.

termines that the proposed condemnation would not unreasonably adversely affect the preservation and enhancement of agricultural resources or that there is no reasonable alternative to the use of lands within the agricultural security area. ALCAB has 60 days in which to render a determination; if it determines that there is no feasible and prudent alternative, or if it fails to act within 60 days, the requesting agency may proceed to condemn; otherwise, the condemnation "shall not be effected." Section 306(c), 71 P.S. § 106(c); *see also* Section 13 of the ASA Law, 3 P.S. § 913.

The Administrative Code clearly empowers PennDOT to condemn for all transportation purposes and, by way of Section 106 of the Administrative Code, it also clearly places a limitation on its power to condemn for highway purposes, except for activities relating to existing highways. Under any reading of the statute, ALCAB review is required before PennDOT can condemn for highway purposes, unless the interchange project is an activity relating to existing highways within the meaning of Section 306(d)(1).

Specifically, Section 306(d)(1) of the Administrative Code, 71 P.S. § 106(d)(1), creates an exception to ALCAB review process for "activities relating to existing highways such as, but not limited to, widening roadways, the elimination of curves or reconstruction." Although Interstate Rte. 81 itself is an existing highway, by its plain language, the statute creates an exception for a subset of "activities," and not all activities related to existing highways. The exception's qualifying language— "such as, but not limited to widening roadways, the elimination of curves or reconstruction"—clearly contemplates only those activities that take place within the existing roadbed. ALCAB's has jurisdiction over condemnation for highway purposes, with the exception of activities relating to existing highways that do not go beyond the existing roadbed. Relocation of highways and the addition of an interchange involving new ramps and connector roads are clearly outside the scope of the exception, and PennDOT must seek ALCAB approval before it can file a declaration of taking.

In conclusion, PennDOT may enter the Whites' property without ALCAB approval for testing and planning purposes pursuant to the Eminent Domain Code, which requires prior notice of entry. For this reason, PennDOT's Objections I, II, and VI are sustained; the others are overruled. On the remaining issue, the Whites' motion for summary relief is granted: PennDOT must obtain ALCAB approval for all or part of the proposed interchange project before it can file a declaration of taking involving lands used for productive agricultural purposes. Finally, PennDOT's motion to strike exhibits attached to the Whites' brief in support of their motion for summary relief is denied for the reason that the exhibits could have been, and should have been, attached to the motion itself.

## *ORDER*

AND NOW, this 30th day of August, 1999, PennDOT's Preliminary Objections I, II, and VI are sustained, and the others are overruled. PennDOT may enter the Whites' property prior to condemnation pursuant to Section 409 of the Eminent Domain Code, 26 P.S. § 1–409. On the remaining issue, the Whites' motion for summary relief is granted: PennDOT must obtain ALCAB approval for all or part of the proposed interchange project before it can file a declaration of taking involving lands used for productive agricultural purposes. PennDOT's motion to strike exhibits attached to the Whites' brief in support of their motion for summary relief is denied.

Concurring and dissenting opinion by KELLEY, J.

KELLEY, Judge, concurring and dissenting.

I concur in the majority's disposition of the preliminary objections filed by the Pennsylvania Department of Transportation (PennDOT) in response to Lamar and Lois White's complaint. I respectfully dissent, however, with respect to the majority's disposition of the White's motion for summary relief.

The majority interprets Section 306 of the Administrative Code of 1929[1] as requiring PennDOT to seek approval by the Agricultural Lands Condemnation Approval Board (ALCAB) before PennDOT can file a declaration of taking. I disagree with this interpretation.

Section 306(d)(1) provides that the AL-CAB shall have jurisdiction over condemnation for "[h]ighway purposes, but not including activities relating to existing highways such as, but not limited to, widening roadways, the elimination of curbs or reconstruction." The majority states that Section 306(d)(1) creates an exception for a subset of "activities" and not all activities relating to existing highways. While I agree that the language of Section 306(d)(1) creates an exception for activities relating to existing highways, I do not agree that the language which states "such as, but not limited to widening roadways, the elimination of curbs reconstruction" creates an exception for a subset of "activities" that only take place within the existing roadbed. To the contrary, I believe the language of the statute clearly contemplates situations where PennDOT is seeking to construct an interchange by virtue of the fact that the language states "such as, but not limited to widening roadways, the elimination of curbs or reconstruction."

The fact that the language of the statute states "such as, but not limited to" indicates that the ALCAB does not have jurisdiction over any activity relating to an existing highway. I believe that the General Assembly, when it enacted Section 306(d)(1), intended only to give examples of the types of activities that the ALCAB did not have jurisdiction over with respect to activities relating to existing highways. I do not believe that the General Assembly intended to limit the exception to a "subset" of activities that take place within the existing roadbed. If the General Assembly had so intended, I believe that it would have included plain language to that effect. Moreover, even if the language of the statute does create an exception for a "subset" of activities, I believe that the construction of an interchange is encompassed within the term "reconstruction."

Accordingly, I would deny the Whites' motion for summary relief and hold that PennDOT is not required to obtain AL-CAB approval for all or part of the proposed interchange project before it can file a declaration of taking.

1. Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 106.