# Nazar v. Clark Distribution Systems Inc.

C.P. of Lackawanna County, no. 99-CV-5174.

*Christina T. Novajosky* and *Mary D. Walsh-Dempsey,* for plaintiff.

*Elizabeth A. Maguschak, Brian F. Jackson* and *Schaun D. Henry,* for defendant.

NEALON, *J.,* May 5, 2000—Defendant, Clark Distribution Systems Inc., has filed preliminary objections in the nature of a demurrer to Count II of the complaint filed by its former employee, plaintiff, John Nazar, in which Nazar asserts a common-law claim for wrongful discharge. Since Nazar asserts that Clark terminated him in retaliation for his filing a complaint with a Commonwealth agency, alleging disability discrimination by Clark, Nazar's discharge may violate a recognized public policy in Pennsylvania. Therefore, the preliminary objections will be denied.

## I. FACTUAL BACKGROUND

According to the well-pleaded allegations of his complaint, Nazar suffered a work-related injury during the course of his employment as a dock worker with Clark,

as a result of which he experienced certain physical limitations. (See plaintiff's complaint, ¶¶12-14.) Nazar contends that in an effort to compel him to quit his job, Clark began to harass and discriminate against him based upon his disability. (*Id.,* ¶¶19-22.) On April 6, 1998, Nazar filed a complaint with the Pennsylvania Human Relations Commission, alleging disability discrimination by Clark. (*Id.,* ¶3.)

Nazar maintains that in retaliation for his filing of a disability claim with the PHRC, Clark terminated him on August 3, 1998. (*Id.,* ¶32.) After Nazar received a "right to sue" letter from the PHRC on October 6, 1999, he commenced the above-captioned matter on October 22, 1999. (*Id.,* ¶¶4-5.) In his complaint, Nazar advances two causes of action; the first alleging a disability discrimination claim under the Pennsylvania Human Relations Act, and the second asserting a common-law claim for wrongful discharge.

In its preliminary objections, Clark submits that the PHRA provides the sole remedy for a claim of discriminatory termination and precludes an employee from filing a common-law claim for wrongful discharge. In the event that it is determined that Nazar's exclusive remedy lies within the framework of the PHRA, Clark also seeks to dismiss Nazar's request for punitive damages on the grounds that they are not recoverable under the PHRA. Nazar counters that he has articulated a cognizable public policy that has been violated by Clark's discharge of Nazar in retaliation for exercising his statutory right to present a discrimination claim to the PHRC. The parties have submitted their respective memoranda of law, and following the completion of oral argument on May 3, 2000, this matter was submitted for a decision.

## II. DISCUSSION

### (A) *Standard of Review*

"Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." *White v. PennDOT,* 738 A.2d 27, 31 (Pa. Commw. 1999). When considering preliminary objections, all material facts set forth in the challenged pleading are admitted as true, as well as all inferences reasonably deducible therefrom. *DeMary v. Latrobe Printing Co.,* 2000 WL 10232, ¶5 (Pa. Super. 2000); *Main Line Health Inc. v. CAT Fund,* 738 A.2d 66, 69 n.13 (Pa. Commw. 1999). Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. *Pacurariu v. Commonwealth,* 744 A.2d 389, 391 n.1 (Pa. Commw. 2000); *White,* 738 A.2d at 31. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections. *Edwards v. Germantown Hospital,* 736 A.2d 612, 614 (Pa. Super. 1999); *Giordano v. Ridge,* 737 A.2d 350, 352 (Pa. Commw. 1999).

### (B) *Wrongful Discharge*

It is undisputed that Nazar was an "at-will" employee of Clark since he did not have a written or oral employment contract for a specific period of time, nor was he protected by any collective bargaining agreement. Generally, an employer "may discharge an employee with or without cause, at pleasure, unless restrained by some contract." *Shick v. Shirey,* 552 Pa. 590, 595, 716 A.2d

1231, 1233 (1998) (quoting *Henry v. Pittsburgh & Lake Erie Railroad Co.,* 139 Pa. 289, 297, 21 A. 157 (1891)); *Krajsa v. Keypunch Inc.,* 424 Pa. Super. 230, 237, 622 A.2d 355, 358 (1993). Absent a statutory or contractual provision to the contrary, the law recognizes the power of either party to terminate an employment relationship for any or no reason. *Geary v. U.S. Steel Corp.,* 456 Pa. 171, 175, 319 A.2d 174, 176 (1974); *Holewinski v. Children's Hospital of Pittsburgh,* 437 Pa. Super. 174, 178, 649 A.2d 712, 715 (1994).

However, the employer's ability to dismiss an employee "at will" with or without cause is not absolute and may be qualified by the dictates of public policy. *Shick, supra.* Pennsylvania law recognizes a judicially created "public policy" exception to the at-will employment doctrine in those instances in which the discharge of an employee threatens a clear mandate of public policy. *Hunger v. Grand Central Sanitation,* 447 Pa. Super. 575, 580, 670 A.2d 173, 175 (1996). As the Supreme Court of Pennsylvania remarked 25 years ago:

"It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened." *Geary,* 456 Pa. at 184, 319 A.2d at 180.

To state a cause of action for wrongful discharge based upon the public policy exception to the at-will employment doctrine, the employee must identify "a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision." *Hunger, supra; Jacques v. Akzo International Salt Inc.,*

422 Pa. Super. 419, 430, 619 A.2d 748, 753 (1993). The public policy at issue should be the type which "strikes at the heart of [the] citizen's social right[s], duties, and responsibilities," *McGonagle v. Union Fidelity Corp.,* 383 Pa. Super. 223, 231, 556 A.2d 878, 882 (1989), *alloc. denied,* 525 Pa. 584, 575 A.2d 115 (1990), and "[a]bsent legislation, the judiciary must define the cause of action in case-by-case determinations." *Reitz v. Persing,* 831 F. Supp. 410, 414-15 (M.D. Pa. 1993) (citing *Yetter v. Ward Trucking Corp.,* 401 Pa. Super. 467, 585 A.2d 1022 (1991)).

In essence, Pennsylvania courts have recognized the existence of a public policy violation in those instances in which the employee is terminated after [s]he: (1) participates in conduct required by law; (2) refuses to perform an act prohibited by law; or (3) engages in conduct which [s]he is privileged by law to do. Therefore, an employee may state a cause of action for wrongful discharge if [s]he is fired for performing a function required by law, for example, reporting a nuclear safety violation in compliance with federal law, *Field v. Philadelphia Electric Co.,* 388 Pa. Super. 400, 420, 565 A.2d 1170, 1180 (1989), or serving on a jury pursuant to 42 Pa. C.S. §4501. *Reuther v. Fowler & Williams Inc.,* 255 Pa. Super. 28, 33, 386 A.2d 119, 121 (1978). Similarly, an employee may sue for wrongful discharge if the termination was based upon a refusal to participate in unlawful conduct such as furnishing false information to federal investigators, *Hanson v. Gichner Systems Group Inc.,* 831 F. Supp. 403, 406 (M.D. Pa. 1993), or submitting to a polygraph test in an employment setting in violation of 18 Pa. C.S. §7321. *Kroen v. Bedway Security Agency Inc.,* 430 Pa. Super. 83, 93, 633 A.2d 628, 633 (1993).

Moreover, an employee may recover for wrongful discharge if [s]he is fired for exercising a fundamental right protected by law. See *Shick,* 716 A.2d at 1237-38 (employee discharged in retaliation for filing a workers' compensation claim); *Highhouse v. Avery Transportation,* 443 Pa. Super. 120, 126-27, 660 A.2d 1374, 1377-78 (1995) (employee may recover for wrongful discharge if [s]he is terminated for filing an unemployment compensation claim); *Novosel v. Nationwide Insurance Co.,* 721 F.2d 894, 900 (3d Cir. 1983) (public policy violation based upon infringement of First Amendment rights where employee was terminated for refusing to participate in the employer's legislative lobbying efforts and for opposing the employer's political stance); *Reitz,* 831 F. Supp. at 415 (public policy implicated where termination compromised the employee's First Amendment rights and Pennsylvania constitutional rights to free communication of thoughts); *Rettinger v. American Can Co.,* 574 F. Supp. 306, 311 (M.D. Pa. 1983) (employment terminated in retaliation for filing workers' compensation claim); *Gebert v. Granahan,* 101 Lacka. Jur. 75, 85 (1999) (employee discharged in retaliation for filing an unemployment compensation claim).

Relying upon *Clay v. Advanced Computer Applications Inc.,* 522 Pa. 86, 559 A.2d 917 (1989), Clark argues that Nazar is barred from pursuing a tort action for wrongful discharge. While it is true that Clay held that the PHRA affords a statutory remedy which precludes an employee from pursuing a common-law claim for wrongful discharge based upon discrimination, Nazar's wrongful discharge claim is not predicated upon Clark's alleged discriminatory actions. Rather, Nazar asserts in Count II of the complaint that he was terminated as a

sanction for exercising a statutorily protected right by filing a disability discrimination claim with the PHRC. Thus, the question to be decided at this stage is whether the discharge of an employee in retaliation for filing a PHRA claim against an employer is violative of a public policy mandate in Pennsylvania.

The Supreme Court of Pennsylvania has recently considered what type of legislation or regulation may serve as a basis for a recognized facet of public policy in the context of a wrongful termination claim. In *McLaughlin v. Gastrointestinal Specialists Inc.,* 750 A.2d 283 (Pa. 2000), an employee who voiced internal safety concerns to her employer maintained that she was wrongfully discharged for exercising her rights under the federal Occupational Safety & Health Act of 1970, 29 U.S.C. §§651-660(c). Rejecting the contention that a *federal* regulation evinces a *state* public policy, the *McLaughlin* court held "that it is a mistake to baldly point to a federal statute or administrative regulation and, without more, proclaim this as the public policy of the Commonwealth, such that every violation of any federal code or statute becomes the basis for seeking a common-law remedy against an employer." *Id.* at 290.

*McLaughlin* clearly pronounced, however, that state statutes and laws can serve as the basis for a public policy mandate. As Justice Newman eloquently reasoned:

"Our previous cases in this arena have not directly addressed the issue of what constitutes 'public policy,' but we have stated in cases outside of the wrongful termination context that 'public policy is to be ascertained by reference to the laws and legal precedents and not from supposed public interest.' . . . Implicit in the previous determinations of this court is that we declare the

public policy of this Commonwealth by examining the precedent within Pennsylvania, looking to our own constitution, court decisions and statutes promulgated by our legislature. . . .

"*McLaughlin* is not a case in which the employer avers that she made a complaint to a Commonwealth agency, as existed in *Shick,* and was fired in retaliation. *Such a case implicates the policy of the Commonwealth because it thwarts the administration of a Commonwealth agency and undermines the statutory obligations of the employer and the employee, which a Pennsylvania statute governs. . . .*

"Accordingly, we hold that in order to set forth a claim for wrongful discharge, a plaintiff must do more than show a possible violation of a federal statute that implicates only her own personal interest. The plaintiff in some way must allege that some *public* policy of *this* Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee. Public policy of the Commonwealth must be just that, the policy of this Commonwealth. In cases like *Shick,* there is no question that the public interest and policy of this Commonwealth were at stake, for if we allowed an employer to discharge an employee for filing a complaint with a Commonwealth agency such as the Workers' Compensation Appeal Board, we impact the rights of that employee and the public by undermining the very purposes of a statute of this Commonwealth." *Id.* at 288-89. (emphasis in original) (citations omitted)

Instantly, Nazar argues that he was discharged by Clark in reprisal for filing a complaint with a Commonwealth agency, to wit, the PHRC. The provisions of the PHRA clearly state that "[i]t is hereby declared to be the public

policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their . . . handicap or disability . . . ." 43 P.S. §952(b). The PHRA further provides a procedure by which an aggrieved party may assert those rights protected by the Act. See 43 P.S. §§959, 1003. As a consequence, a recognized facet of public policy may be violated by terminating an employee in retribution for exercising a right protected by a Pennsylvania statute which, by its plain language, fosters a state public policy.

Thus, this case does involve an allegation by an employee that he was fired in retaliation for submitting a complaint to a Commonwealth agency. In *McLaughlin,* the Supreme Court acknowledged that "[s]uch a case implicates the policy of the Commonwealth because it thwarts the administration of a Commonwealth agency and undermines the statutory obligations of the employer and the employee" and that a court which "allow[s] an employer to discharge an employee for filing a complaint with a Commonwealth agency . . ., impact[s] the rights of that employee and the public by undermining the very purposes of a statute of this Commonwealth." There is no logical basis for permitting an employee who is terminated for filing an unemployment or workers' compensation claim to pursue a common-law wrongful discharge claim, but denying the same rights and recourse to an employee who files a complaint with a different Commonwealth agency that was likewise created to afford remedies to Pennsylvania employees. Since a state public policy may arguably be contravened by firing an employee in retaliation for submitting a complaint to the

PHRC, the preliminary objections will be denied. An appropriate order will follow.[1]

## ORDER

And now, May 5, 2000, upon consideration of the preliminary objections of defendant, Clark Distribution Systems Inc., in the nature of a demurrer to Count II of the complaint, the memoranda of law submitted by the parties and the oral argument of counsel on May 3, 2000, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that the preliminary objections of defendant, Clark Distribution Systems Inc., are denied.

---

1. Clark's request to dismiss the punitive damages claim was contingent upon the grant of its demurrer to Count II of the complaint asserting a common-law claim for wrongful discharge. In light of the denial of the preliminary objections to Count II, the demurrer to the punitive damages will also be denied. See *Rue v. K-Mart Corp.*, 456 Pa. Super. 641, 691 A.2d 498 (1997) (jury awarded punitive damages for wrongful discharge); *McGonagle v. Union Fidelity Corp.*, 383 Pa. Super. 223, 556 A.2d 878 (1989) (same).