

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2005

# Kelchner v. Sycamore Manor

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2552

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Kelchner v. Sycamore Manor" (2005). *2005 Decisions.* Paper 1479.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1479

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2552

———

LISA R. KELCHNER

Appellant

v.

SYCAMORE MANOR HEALTH CENTER;
PRESBYTERIAN HOMES, INC.

———

On appeal of a final order
of the United States District Court for the Middle District of Pennsylvania
Civil No: 02-cv-00324

District Judge: The Honorable John E. Jones III

———

Submitted pursuant to Third Circuit LAR 34.1(a)
on February 10, 2005

Before: BARRY, FUENTES,
and VAN ANTWERPEN, *Circuit Judges*

(Filed: March 3, 2005)

_____

OPINION OF THE COURT
_____

Fuentes, *Circuit Judge*.

Petitioner Lisa Kelchner appeals the District Court's order of partial summary judgment dismissing her claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA" or "the Act"). The District Court held that Kelchner's employer, Sycamore Manor Health Center ("Sycamore"), did not violate the FCRA by requiring Kelchnre to sign a blanket authorization entitling Sycamore to obtain Kelchner's credit report in the future. Because such blanket authorizations are not inconsistent with the requirements of the FCRA, we will affirm.

I.

As we write only for the parties, we recite only the essential facts. Kelchner had been employed at Sycamore for about nineteen years when, in February 2001, she and other employees of Sycamore's parent, Presbyterian Homes, Inc. (PHI), were asked to sign an "Annual Statement of Personnel Policy Understanding."[1] The Annual Statement would authorize PHI to obtain "investigative consumer reports" that "may involve personal interviews with sources such as neighbors, friends, or associates" for "employment related purposes only." When Kelchner refused to sign the Annual Statement she was informed that execution of the Statement was a condition of continued employment and that if she failed to sign the Statement by March 21, 2000, she would be taken off the active schedule. Because she refused to sign, Kelchner's work hours were reduced to zero on March 21, 2001. Kelchner remained on the payroll, however, and on

---

[1]Kelchner was a recreation director at Sycamore, a nursing home.

June 12, 2001, PHI sent her a second, revised Annual Statement to be signed by June 19, 2001. The revised Statement sought authorization to obtain "consumer reports" containing information relating to employees' "credit standing, character, general reputation, personal characteristics, or mode of living" for the purposes of investigating "theft from residents, coworkers, or PHI property; potential fraud in insurance claims; or other forms of dishonesty." Kelchner was warned that if she did not sign the revised Statement, PHI would deem her employment "abandoned." Kelchner again refused to sign and her employment at PHI ended on June 30, 2001.

Kelchner claimed that she was wrongfully terminated, and that a class of plaintiffs employed by PHI and its subsidiary Sycamore signed the authorization forms under duress due to threat of termination. The District Court held that blanket authorization forms such as those required by PHI are permissible under the FCRA and certified the issue for interlocutory appeal. Although it had earlier conditionally certified a plaintiffs class of all persons employed by PHI from whom PHI sought authorization to procure consumer reports, the District Court decertified the class when it granted partial summary judgment to the defendants on Kelchner's FCRA claims.

## II.

Kelchner claims that (1) PHI had no valid employment purpose for which it sought her credit report authorization; (2) PHI could not require Kelchner and other employees to sign a blanket, advance authorization form; and (3) that it was improper for PHI to

3

constructively terminate Kelchner upon her refusal to sign the authorization form.[2]  We

exercise plenary review over the district court's decision to grant summary judgment.  *See*

*Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).  Under Federal Rule

of Civil Procedure 56(c), summary judgment is proper where no genuine issue of material

fact exists, and where, viewing the facts in the light most favorable to the non-moving

party, the moving party is entitled to judgment as a matter of law.  There is no dispute as

to the material facts in this case; at issue are only the requirements of the FCRA, a matter

of statutory interpretation.  *See Tineo v. Ashcroft*, 350 F.3d 382, 389 (3d Cir. 2003)

(holding statutory interpretation is subject to plenary review).

A.

---

[2]Kelchner initially asserted claims under the Employment Retirement Income Security Act of 1874 ("ERISA"), 29 U.S.C. §§ 1001-1461, as amended by the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161, et seq., in addition to her Pennsylvania state law claim of wrongful termination.

We address the issues raised under the FCRA only insofar as they are relevant to determining whether PHI and Sycamore Manor are liable for wrongful termination.  *See Highhouse v. Avery Transportation*, 660 A.2d 1374, 1377 (Pa. Super. 1995) ("An employer's liability for wrongful discharge rests on whether a 'well-recognized facet of public policy is at stake'" and "courts have consistently held that employers violate the public policy of this Commonwealth by discharging employees for exercising legal rights"); *see also Nazar v. Clark Distribution Sys. Inc.*, 46 Pa. D. & C4th 28 (Pa. Com. Pl. 2000) (finding discharge violated public policy expressed in federal law).  Therefore, our resolution of this case does not rest on any implication that there would be a private right of action to bring a claim for equitable relief directly under the FCRA.  We exercise jurisdiction because the District Court had supplemental jurisdiction and because the merits of plaintiff's wrongful termination claim "turn on a substantial federal issue" that is "essential" to her cause of action.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002).

The Fair Credit Reporting Act provides that, if certain conditions are met, credit reports may be issued to employers for "employment purposes." 15 U.S.C. § 1681b(a)(3)(B). The FCRA defines "employment purposes" as those relating to "[evaluation of] a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(h). Kelchner's first contention is that, because her retention as an employee was not in question, PHI had no valid employment purpose for procuring her credit report.

Kelchner is right that Congress implicitly recognized employees' privacy interest in avoiding procurement of their credit reports for invalid purposes. But PHI maintains that it needs access to employee credit reports in order to investigate theft, fraud and other dishonesty if and when it arises.[3] PHI claims that it newly imposed the requirement that its employees sign the credit report authorization forms in response to the allegedly broad scope of its protective and investigative duties as an employer, as well as new constraints on its access to information about employees under the FCRA. PHI is persuasive that its ability effectively to investigate allegations pertaining to an employee would be substantially impaired if it had to wait until the investigation was underway before it could obtain authorization from her.

_____

[3]PHI's revised disclosure and authorization form also indicated that PHI would obtain driving records for employees assigned regular driving duties. Although those reports would also serve a clear employment purpose, that provision is not applicable to Kelchner.

5

It is important to note that PHI did not actually obtain a credit report on Kelchner. It sought authorization to do so in the future, if and when the need arose. While we do not foreclose the possibility that under certain circumstances an employer may have a valid employment purpose for which to obtain a credit report even before an employee is the subject of internal investigation, here, PHI sought only authorization to procure a report if and when the need arose, and the potential needs it identified clearly qualify as valid employment purposes.

B.

Kelchner's second contention is that PHI was prohibited from procuring credit reports regarding its employees based on blanket, one-time authorization forms.

Under the FCRA, an employer may obtain a credit report for employment purposes if "a clear and conspicuous disclosure has been made in writing to the consumer *at any time before the report is procured* or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and the consumer has authorized in writing...the procurement of the report by that person." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added). The consumer-employee must authorize disclosure in writing. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii).

The requirement that an employer obtain authorization "at any time before the report is procured" is unambiguous. The plain language of the statute authorizes the employer to obtain an employee's written authorization at "any time" during the

employment relationship. *See* 15 U.S.C. § 1681b(b)(2)(A)(i); s*ee also Valansi v. Ashcroft*, 278 F.3d 203, 209 (3d Cir. 2002) ("When the statutory language has a clear meaning, we need not look further.").

C.

We turn to Kelchner's final contention. Kelchner claims that employee authorization under 15 U.S.C. § 1681b(b) must be voluntary in that it cannot be compelled as a condition of employment. However, we see nothing in the statute that implies such a limit on an employer's ability to obtain blanket authorization from an employee, at least in the context of an at-will employment relationship. But even if we were to view the statute as ambiguous on this point, we are persuaded by a 1999 advisory opinion letter issued by the FTC, which opined that the FCRA "does not prohibit an employer from taking adverse action against an employee or applicant who refuses to authorize the employer to procure a consumer report." Oct. 1, 1999, FTC Opinion Letter. *See also Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (holding that an opinion letter by the administering agency is entitled to respect under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). In sum, we agree that an employer is not prohibited from terminating an employee if she refuses to authorize her employer to obtain her consumer credit report.

III.

For all the foregoing reasons, the District Court was clearly correct in its

7

interpretation of the Act and the defendants were entitled to summary judgment on

Kelchner's claims under the FCRA.  We will affirm.